UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|                                              |     |                           |
| -------------------------------------------- | --- | ------------------------- |
| JOSEPH W. SHEPARD,<br>Plaintiff,             | )<br>)<br>)<br>) |              |
| v.                                           | )<br>) | C.A. No. 16-407-JJM-LDA |
| RICHARD MCCLOSKY, RN and<br>NANCY HALL, RN,[1]<br>Defendants. | )<br>)<br>)<br>)<br>) |  |

## ORDER

Joseph W. Shepard, an inmate with the R.I. Department of Corrections, seeks damages under 42 U.S.C. 1983, alleging that nurses at the correctional facility failed to provide him prompt medical treatment when he was bleeding profusely from his rectum, a week after having hemorrhoid surgery. The question presented by these cross-motions for summary judgment is whether there are sufficient facts to support the two-pronged requirements set forth by the United States Supreme Court in *Farmer v. Brennan*, i.e. (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) a prison official must have a "sufficiently culpable state of mind" that constitutes "deliberate indifference" to inmate health or safety. 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 298, 303 (1991)). For reasons set forth below, the Court GRANTS the Defendants' Motion for Summary Judgment (ECF No. 55) and DENIES the Plaintiff's Motion for Summary Judgment. ECF No. 62.

---

[1] The Defendant's actual name is Nancy Ruotolo Hull.

## I.   RELEVANT FACTS

After undergoing hemorrhoid surgery at Rhode Island Hospital, Joseph Shepard was discharged and returned to the state prison.   Hospital personnel informed him to advise prison medical providers if there were any acute changes including "bleeding, puss, or drainage, or severe pain." Nine days later, Mr. Shepard awoke at 6 a.m. with severe anal pain with his sheets and clothing soaked in his own blood.   He called out of his cell for help from correctional officers.   Officers contacted high security medical staff.

Nurse Richard McCloskey, who was in the cell block distributing medicines to inmates, arrived at Mr. Shepard's cell.   He noticed the bloody area and blood-soaked bedding.   He performed a cursory observation of Mr. Shepard's open wound and told him he would get some gauze.   Mr. Shepard told Nurse McCloskey that he was in extreme pain and that hospital personnel had told him to return to the hospital if the wound re-opened.   Nurse McCloskey told Mr. Shepard that he could not go to the hospital and that "this is what happens when you have hemorrhoids, you're going to have to deal with it."   Mr. Shepard continued to bleed profusely.

Later that afternoon, prison officials transferred Mr. Shepard to the intake facility because of new criminal charges.   Nurse Nancy Ruotolo Hull conducted a medical screening of Mr. Shepard.   According to Mr. Shepard, Nurse Hull appeared "grossed out" at the sight of his condition and became verbally abusive, stating, "Looks like you got your period, you should be at the women's facility."   She provided

Mr. Shepard with additional protective brief underwear. She then placed Mr. Shepard into a windowed observation cell where Nurse Hull told him to "rest it off."

At about 5:00 p.m. that evening, a second-shift nurse Steven Fortin evaluated Mr. Shepard and called prison physician Dr. Simon Melnick and Medical Director Dr. Fred Vohr. Dr. Melnick ordered Mr. Shepard to be transported to and evaluated at Rhode Island Hospital.

Medical personnel at Rhode Island Hospital examined Mr. Shepard. He had abnormal vital signs. The doctors treated him for anemia and performed silver nitrate cauterization to his wound. Medical personnel applied a dressing to the wound. The hospital doctors prescribed pain medication. He returned to the prison at about 10 p.m. that evening.

Nothing shows any medical issues with Mr. Shepard beyond that evening.

## II.  STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the nonmoving party. *Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010) (quoting *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008)); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). When there are cross-motions for

summary judgment, as there are here, "[the Court] evaluate[s] each motion independently and determine[s] 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Matusevich v. Middlesex Mut. Assur. Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (quoting *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)). In viewing each motion separately, the Court "draw[s] all inferences in favor of the nonmoving party." *Cooper v. D'Amore*, 881 F.3d 247, 249–50 (1st Cir. 2018) (quoting *Fadili v. Deutsche Bank Nat'l Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014)).

## III. APPLICATION OF FACTS AND LAW

The Eight Amendment to the United States Constitution mandates that the government not inflict cruel and unusual punishment. In the context of medical treatment a prisoner receives (or fails to receive), the United States Supreme Court in *Farmer v. Brennan* established a two-prong test a plaintiff must meet to hold a prison official liable for violating the Eighth Amendment.

First, the deprivation, or maltreatment alleged must be "objectively and 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). The First Circuit has held that "a 'serious medical need' is one 'that has been diagnosed by a physician as a mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Mahan v. Plymouth Cty. House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995) (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). The "seriousness"

4

of an inmate's needs may be determined by reference to the effect of the delay of treatment. *Gaudreault*, 923 F.2d at 208.

Second, under *Farmer*, the defendants must possess a culpable state of mind, meaning that they were deliberate in their indifference to the prisoner's health or safety. 511 U.S. at 834. The deliberate indifference standard for a claim based on inadequate medical care "encompasses a 'narrow band of conduct': subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim; rather, the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)) (citations and internal quotation marks omitted).

A review of the facts in the light most favorable to Mr. Shepard shows that he has not meet the first criteria.

Both Defendants, Nurse McCloskey, and Nurse Hull, examined, assessed, and treated Mr. Shepard. They took his vital signs that they reported as normal. They provided him with gauze and extra undergarments. Three nurses at the prison treated and examined Mr. Shepard on the day in question. While Mr. Shepard wanted to be transported to the hospital in the morning, he was in fact transported in the afternoon. At best, the allegations in the complaint amount to an approximate 8-9 hour delay in treatment.

Moreover, there is no evidence that the delay caused Mr. Shepard any appreciable harm. Although he certainly endured some discomfort, anxiety, and pain, Mr. Shepard can prove no set of facts amounting to damages as to constitute constitutionally recognized cruel and unusual punishment. Mr. Shepard simply disagreed with the treatment he received from Nurses McCloskey and Hull and their assessment of his medical needs. There is no evidence that their assessment and care for Mr. Shepard while he was at the prison violated any standard of care required by the medical profession.

Taking the facts in the light most favorable to Mr. Shepard, the facts point to a delay in hospital treatment, negligence at best, insufficient to form a constitutional violation. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation *must* place verifying medical evidence in the record to establish the *detrimental effect* of the delay." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added). There was no serious harm to Mr. Shepard as several nurses monitored him, then ultimately sent him to the hospital. He returned to the prison in stable condition following a simple cauterization procedure. Thus, Mr. Shepard has failed to set forth facts sufficient to support allegations that rise to the level of a constitutional violation.

As for the allegations that Nurse Hull ridiculed him during her examination, the Eighth Amendment prohibition against cruel and unusual punishment against prisoners do not protect against this isolated type of verbal abuse. See *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("[M]ere allegations of verbal abuse, threats

6

or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action."); *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993) (holding that verbal abuse, threatening language and gestures by a correctional officer are not a constitutional violation). While Mr. Shepard alleges some seemingly unkind and inhumane comments by the nurse at the prison, they simply do not rise to the level of constitutional proportion.

Mr. Shepard has failed to establish an objectively serious violation of his constitutional rights. The Court therefore need not determine the second prong of the *Farmer* test, i.e., if there is sufficient evidence of deliberate indifference by any prison official.

## IV. CONCLUSION

While Mr. Shepard has complaints about the medical treatment he received on February 19, 2015, while in state prison, he has failed to establish a constitutional violation because there is insufficient evidence to show that the deprivation alleged was, objectively, "sufficiently serious." Therefore, the Court GRANTS the Defendants' Motion for Summary Judgment (ECF No. 55) and DENIES the Plaintiff's Motion for Summary Judgment. ECF No. 62. Judgment will enter for the Defendants.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

October 24, 2018